IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JIMMY WAGONER,

        Petitioner,

v.                                             Civil Action No. 1:11cv172
                                                        (Judge Keeley)

TERRY O'BRIEN, Warden,

        Respondent.

**OPINION/REPORT AND RECOMMENDATION**

**I. Procedural Background**

On October 31, 2011, the petitioner, Jimmy Wagoner, a federal inmate incarcerated at the United States Penitentiary at Hazelton, West Virginia ["USP Hazelton"], filed a *pro se* petition for Habeas Corpus pursuant to 28 U.S.C. § 2241. In it, the petitioner challenges his custody classification as a "Max Custody" inmate. *See* Pet. (Doc. 1). On December 2, 2011, the respondent filed a motion to dismiss and supporting memorandum, which alternatively requested summary judgment. (Docs. 10, 11). On December 5, 2011, a Roseboro Notice was sent to the petitioner. (Doc. 12). On December 19, the petitioner filed reply to the respondent's Motion to Dismiss or, in the alternative, Motion for Summary Judgement. [Doc 14]. This matter is before the undersigned for a Report and Recommendation pursuant to LR PL P 2.

**II. Factual Background**

On June 5, 1989, the petitioner was sentenced in the United States District Court for the

District of Minnesota to thirty years for Conspiracy to Possess with Intent to Distribute Cocaine and Crack Cocaine, in violation of 21 U.S.C. § 841 (A)(1) and Use of U.S. Mail to Facilitate a Drug Offense, in violation of 21 U.S.C. § 843 (B). (Doc. 11-1, p. 11). The petitioner was committed to the custody of the BOP on July 17, 1989, and his current projected release date is April 14, 2017 via Good Conduct Time. (Doc. 11-1, pp. 11-1.)

The petitioner was assigned an "IN" custody classification from 1989 to 1991.[1] On December 19, 1191, the petitioner's custody classification was changed from "IN" to "Maximum." (Doc. 11, p.3). This increase in classification was the result of twenty-three disciplinary violations, including six violations involving assault without serious injury and four violations for threatening bodily harm. *Id.* Following his classification as a maximum custody inmate, the petitioner has accumulated 128 separate violations including, but not limited to, engaging in sexual acts, threatening a staff member, assaulting a staff member, assaulting without serious injury, fighting with another person, refusing to obey an order, interfering with security devices, disruptive conduct, threatening bodily harm, and possessing intoxicants. *Id.* at ¶ 8. In addition, the petitioner received a Public Safety Factor [PSF] for rioting following an incident in 1992. *Id.* at ¶ 9. Furthermore, there are two pending violations against the petitioner involving 1) threatening bodily harm and 2) assaulting without serious injury. *Id.* at ¶ 10. Based on this pattern of conduct, the petitioner has maintained his maximum custody level since he received it in December 1991. *Id.* at ¶ 11.

---

[1] IN CUSTODY "is the second highest custody level assigned to an inmate which requires the second highest level of security and staff supervision An inmate who has IN custody is assigned to regular quarters and is eligible for all regular work assignments and activities under a normal level of supervision. Inmates with IN custody are not eligible for work details or programs outside the institution's secure perimeter." See P51000.08, Ch. 2, p.2 available at www.bop.gov/policy/progstat/5100.008.pdf..

### III. Contentions of the Parties

**1)     The Petition**

The petitioner asserts that he has been improperly assigned to maximum custody and maintains that he did not violate any of the criteria that are used in determining inmate custody levels. [Doc. 1]. In Exhibit-1 [Doc 1-1], the petitioner describes the scenario that led to his classification as a maximum custody inmate. The petitioner asserts that a staff member wrongly accused him of assaulting a staff member on December 19, 1991. The petitioner maintains that it was impossible for him to commit the assault because he was locked in a cell at the time of the assault. The petitioner maintains that his current classification prevents him from participating in various prison programs and puts his life in danger due to his placement with other maximum custody inmates. (Doc. 1-1) Therefore, the petitioner requests the court to allow his case to proceed in order to determine if he was improperly assigned to maximum custody. (Doc. 1).

**2)     The respondent's response and motion**

The respondent asserts that the petitioner's pattern of disruptive and assaultive behavior warrants his classification as a maximum custody inmate and relies on the respondent's 128 violations since his maximum classification as evidence of this conduct. Further, the respondent maintains that inmate custody classifications are reviewed on an annual basis and that the "intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines." (Doc. 11, p. 3). Based upon the facts stated above, the respondent requests that the court grant his motion to dismiss the petitioner's claim or in the alternative, grant his motion for summary judgment.

The respondent makes a two-prong argument in support of the petitioner's classification as

a maximum custody inmate. First, the respondent reasons that the petitioner's maximum custody classification is not erroneous and was correctly assigned to the petitioner following the 1991 incident. The respondents directs the court to the petitioner's extensive history of violations and the lack of evidence supporting the petitioner's claim. Second, the respondent asserts that the BOP has not violated the petitioner's due process rights. The respondent argues that even if the petitioner was improperly assigned to maximum custody, this would not require his reclassification because "an inmate does not have a constitutional right to be placed in a specific security classification, and custodial classifications do not create a major disruption in a prisoner's environment." (Doc. 11, p. 8) (quoting *Sandin v. Connor,* 515 U.S. 472 (1995)).\

**3)  Petitioner's response**

On December 19, 2011, the petitioner filed a response to the respondent's motion and supporting memorandum. Herein, the petitioner asserts that there is a genuine issue of material fact. (Doc. 14). The petitioner alleges that he was never given a hearing concerning the December1991 incident that resulted in his reclassification as a maximum custody inmate. (Doc. 14, p. 3). He further contends that a simple assault without injury does not warrant maximum custody classification and maximum custody must be determined based upon "a violation of the [Maximum Custody Assignment] criteria and not the totality of the BOP prohibited codes." [Doc. 14, p.1].

Based upon his contention that he was denied a hearing for the December 1991 incident, the petitioner requests that the court allow the case to proceed to trial and deny the respondent's motion to dismiss.

**IV. Standards of Review**

**1)  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. V. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993); *see also*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)(*quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegation," but must "contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Conley*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Id.* (citations omitted), to one that is "plausible on its face," *Id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] or claim." *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickinson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States,* 289 F.3d 279, 281 (4th Cir. 2002)).

In so doing, the complaint must meet a "plausibility" standard adopted by the Supreme Court in *Ashcroft v. Iqbal*, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

**2)      Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See Blackledge v. Allison*, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. *Maynard v. Dixon* , 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard of summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." *Celotex Corp. V. Catrett,* 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In *Celotex*, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. *Celtotex* at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . .must set forth specific facts showing that there is a genuine issue for trial." *Anderson* at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita,* at 587 (citations omitted).

**V. Analysis**

**1)    Petitioner's Custody Classification is not Erroneous**

The Petitioner sole ground for relief is his allegation that his maximum custody assignment is erroneous. More specifically, he alleges that he did not violate any of the maximum custody assignment criteria. This claim is without merit because the record shows that the decision to change his custody level was not erroneous.

Maximum custody is the highest custody level to which an inmate can be assigned. This classification is for individuals who, by their behavior, have been identified as assaultive, predacious, riotous, serious escape risks, or seriously disruptive to the orderly running of an institution. See P.S. 5100.08, Chapter 2, p. 3. Pursuant to BOP policy, each inmate's custody classification is reviewed annually, with the inmate's unit team and/or Warden being the final review authority. See P.S. 5100.08, Chapter 6, pp.1-2. The intent of the Custody Classification System is to permit staff to use professional judgment within specific guidelines. Id.

Here, the record indicates that BOP staff used their professional judgment when designating

Petitioner as a maximum custody level inmate in 1991. In the prior year alone, Petitioner had committed 23 disciplinary violations, including 6 for Assault Without Serious Injury and 4 for Threatening Bodily Harm. Furthermore, in the 21 years since 1991, Petitioner has not shown that his maximum custody level designation was undeserved. In that time, Petitioner has received over 120 violations of BOP policy. Included among his various disciplinary infractions are findings of guilt for Engaging in Sexual Acts, Threatening A Staff Member, Assaulting A Staff Member, Assaulting Without Serious Injury, Fighting With Another Person, Refusing To Obey An Order, Interfering With Security Devices, Disruptive Conduct, Threatening Bodily Harm, and Possessing Intoxicants.

The decision to designate Petitioner as a Maximum custody inmate in 1991 was clearly not erroneous. Therefore, his claim is without merit and his habeas petition should be dismissed.

**2) Petitioner does not have a Constitutional Right to be Placed in a Specific Security Classification**

Even if the Court finds that Petitioner's custody level is incorrect, such an error does not rise to the level of a due process violation. To show a violation of due process, an inmate must establish that the conditions of his confinement exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, or that conditions of his confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Sandin v. Connor, 515 U.S. 472, 483-84 (1995). Petitioner has failed to meet this burden.

Petitioner alleges that his maximum custody classification has forced him to live around "dangerous" individuals. This, however, is not an atypical or significant hardship that can give rise to a due process violation. See Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997) (holding that

administrative segregation for six months with vermin, human waste, flooded toilet, unbearable heat, cold food, dirty clothing, no outside recreation, and no education was not so atypical as to impose a significant hardship). Being around dangerous individuals is simply part of prison life, something with which every inmate must contend. Therefore, the fact that Petitioner has been forced to live around dangerous individuals does not constitute a due process violation.

Petitioner also alleges that his maximum custody classification has prevented him from being housed at a Federal Correctional Institution (FCI), thereby barring him from participating in certain rehabilitation programs. However, 18 U.S.C. § 4081 gives prison officials full discretion to determine prisoner classification and eligibility for rehabilitative programs in the federal system. Moreover, an inmate has no constitutional entitlement to rehabilitative programs, and the denial of access to them does not rise to the level of a due process violation. Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Therefore, the fact that Petitioner cannot access certain rehabilitative programs that are exclusive to FCI facilities does not constitute a due process violation.

## VI. Recommendation

For the reasons stated, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 10) be **GRANTED**, and the petitioner's § 2241 petition (Doc. 1) be **DENIED and DISMISSED WITH PREJUDICE.**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying those portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Court Judge. Failure to timely file objections to the recommendation set forth above will

result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet, and to counsel of record via electronic means.

DATED: June 18, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE